UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LONNIE KADE WELSH, Institutional ID No. 27818, <br><br>     Plaintiff, <br><br>v. <br><br>BRIAN WILLIAMS, *et al.*, <br><br>     Defendants. | No. 5:22-CV-00183-H |

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This lawsuit arises out of a use-of-force incident at the Texas Civil Commitment Center (TCCC) on September 15, 2020, and the events that followed. Welsh, a civilly detained Sexually Violent Predator (SVP), sued 12 defendants alleging a variety of constitutional violations under 42 U.S.C. § 1983 as well as state law. He seeks monetary damages.

United States Magistrate Judge D. Gordon Bryant, Jr., made findings, conclusions, and a recommendation (FCR) in this case. Dkt. No. 18. Specifically, Judge Bryant recommended that the Court (1) dismiss without prejudice Welsh's claims against Defendants Say and Redman for their non-prosecution of alleged assaults that occurred on March 4, 2022, May 31, 2022, and between May 31 and October 1, 2022; (2) dismiss without prejudice his state-law claims against all parties; and (3) dismiss all of Welsh's other claims with prejudice. Welsh filed lengthy objections. Dkt. No. 25.[1]

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). In

---

[1] Page references to this document refer to the page number assigned as docketed in ECF, as opposed to the page numbers handwritten by Plaintiff.

contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations for plain error. The Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Com'n*, 834 F.2d 419 (5th Cir. 1987), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

The Court has examined the record and reviewed the unobjected-to portions of the FCR for plain error and, finding none, expressly accepts and adopts those portions of the Magistrate Judge's findings, conclusions, and recommendation. Additionally, in light of Welsh's specific objections, the Court has conducted a de novo review of the relevant portions of the FCR and the record in this case. Many of Welsh's objections are either restatements of arguments made in his complaint (as supplemented by his response to the Court's questionnaire), arguments thoroughly addressed by the FCR, conclusory statements, or mere disagreements with the Magistrate Judge's wording. Where objections are repetitive of arguments already made to the Magistrate Judge and the district court finds no error, the court need not make new findings or reiterate the findings and conclusions of the Magistrate Judge. *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993). For that reason, the Court finds it unnecessary to address all but two of Welsh's objections. Thus, except as noted below, the Court expressly accepts and adopts the findings, conclusions, and recommendation of the United States Magistrate Judge. Welsh's objections are overruled.

1.   **Background**

Welsh is an experienced and determined litigant who has filed more than twenty federal civil actions challenging various aspects of his confinement in different institutions over the past

several years.[2] Welsh was a civil detainee in the TCCC when he filed this suit, and he is proceeding pro se and *in forma pauperis*.

Welsh sues the following defendants: (1) Littlefield Police Department (LPD) Officer Brian Williams in his individual capacity; (2) LPD Officer John Doe in his individual capacity; (3) Lamb County Sheriff Gary Maddox in his individual and official capacities; (4) Lamb County District Attorney (DA) Scott Say in his individual and official capacities; (5) Assistant District Attorney (ADA) Rickie Redman in her individual and official capacities; (6) TCCC Facility Administrator Wayne Schmoker in his individual capacity; (7) Management and Training Corporation (MTC) security guard Julian Chavez in his individual capacity; (8) the City of Littlefield, Texas (the City), with LPD Chief Ross Hester as official policymaker; (9) Lamb County, Texas (the County), with Sheriff Gary Maddox, DA Say, and ADA Redman as official policymakers; and (10) MTC with Schmoker as its "principle agent." *Id.* at 1–5.

This lawsuit focuses on events that took place on September 15, 2020—while Welsh was civilly detained at the TCCC—and the subsequent charges against Welsh for felony assault against a security officer. The FCR thoroughly details the facts in this case, and the Court finds it unnecessary to repeat them in full here. Instead, the Court will include only a basic summary of the incidents as they unfolded on that day:

- Welsh covered the window of his room—ostensibly while he used the restroom—in violation of facility rules. Captain Rodriguez asked him to take down the covering at least three times, but Welsh refused. So, Rodriguez called a security team.

- Security staff arrived and ordered Welsh to submit to hand restraints. But because Welsh had uncovered the window by that time, he refused. After three requests, staff opened

---

[2] Indeed, this Court recently joined the Fifth Circuit Court of Appeals, the Supreme Court of the United States, and the Texas state-court system in the conclusion that Welsh is a vexatious litigant who has repeatedly abused the Court's process. *See* No. 5:20-CV-00024-H, Dkt. No. 128 (describing Welsh's prior lawsuits filed in this Court, as well as warnings and sanctions from other courts). There, the Court sanctioned Welsh with a monetary sanction of $500 and barred him from filing any new civil action in this Court until he has paid the sanction in full. *Id.* at 49. Welsh's appeal of the sanction remains pending. *See* U.S.C.A. No. 24-10891.

the food port and sprayed a chemical agent. But Welsh stood on a box, blocked the gas with a sheet, and continued to refuse requests to submit to hand restraints. After several minutes and unsuccessful attempts to gain compliance, a five-man team was instructed to enter Welsh's room. To slow down the staff, Welsh threw a bunch of papers on the floor.

- Welsh claims that as the team entered, Defendant Chavez, who was in the lead, hit him several times and pushed him back—despite allegedly having his hands up in a motion to surrender. Chavez slipped on the papers that Welsh had thrown on the floor, and Welsh alleges that Chavez held onto Welsh's shirt and hit him in the genital region and stomach as he was kneeling or falling to the ground. In the meantime, Welsh removed Chavez's helmet to reveal his identity. Staff then took the helmet from Welsh, placed him on the ground, and secured hand and leg restraints. Video of the incident shows a line of blood on Chavez's face.

- Staff transported Welsh to another room and removed the leg restraints, but Welsh refused to relinquish the hand restraints.[3] Welsh then hid under the bed, so Defendant Schmoker ordered security officer Scott to spray chemical agents twice to gain compliance. Welsh finally surrendered the restraints by placing his hands through the food port. Welsh was in the hand restraints for approximately two and a half hours.

- LPD Officers Williams and Doe responded to the scene, and Chavez and Welsh gave their version of events. Welsh alleges that the audio from the officers' body-worn camera includes Schmoker telling them that he spoke with DA Say and ADA Redman about the incident. The officers then informed Welsh that he would be charged with assault on a security guard, placed him in handcuffs, and allowed him to leave the room to make a written statement. They also photographed Welsh's knee.

- Next, Welsh was instructed to return to his room, but he refused and demanded to wash off the residual chemicals or change clothes. Schmoker told him he would turn on the water but would not give him anything else to remove the chemical spray from the room. So, Welsh ran to the recreation yard, took the handcuffs, and wrapped them in a chain attached to the fence that could not be removed. He refused to move or return to his room unless he was given cleaning supplies. Welsh repeatedly refused instructions to return to his room and continued attempting to negotiate, and, after 15 minutes, security staff was called to remove him from the fence.

- After several warnings that he would be sprayed if he did not submit, a security officer removed Welsh's sunglasses and sprayed him. Welsh responded by taunting the officers and continuing to refuse orders. Staff eventually managed to physically extract him from the fence, carried him back to his room, and told him to de-contaminate.

- Officers Williams and Doe took Welsh into custody on the assault charge.

---

[3] Welsh claims he refused to relinquish the hand restraints because he could not position himself properly so they could remove them due to an injury for which Welsh refused treatment.

4

- Welsh remained in the Lamb County Jail for approximately 18 months until the State dropped the charges.

*See* Dkt. No. 18 at 3–9.

As summarized in the FCR, "Welsh's allegations, confirmed by the video footage, paint the picture of an escalating resident compliance issue in which Welsh repeatedly defied orders, resisted and/or blocked chemical agents, and continued to fight against physical restraints once security personnel entered his room. Moreover, Welsh orally and in writing confirmed to Officer Williams that he removed Chavez's helmet." *See* Dkt. No. 18 at 47.

Welsh later added claims against Defendants Say and Redman for their failure or refusal to criminally prosecute TCCC personnel for their alleged assaults against him on March 4, 2022, May 31, 2022, and between May 31 and October 1, 2022.[4]

### 2.     The Magistrate Judge's Findings, Conclusions, and Recommendation

The Magistrate Judge endeavored to interpret Welsh's detailed pleadings and thoroughly reviewed Welsh's claims as described in his complaint. Additionally, Welsh was permitted to supplement his complaint with responses to a questionnaire designed to allow him a chance to further develop his claims and to assist in the judicial screening process. *See Watson v. Ault*, 525 F.3d 886, 893–94 (5th Cir. 1976). The Magistrate Judge also received and reviewed authenticated records from Lamb County and the Texas Civil Commitment Office (TCCO), including incident reports, court records, grievances, inmate requests, and other records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). The Magistrate Judge accepted the facts stated by Welsh in his complaint and answers to the questionnaire as true. However, the Court did not accept as true "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory

---

[4] Welsh raised these claims in his responses to the questionnaire. Dkt. No. 17.

statements." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

After this screening, the Magistrate Judge concluded that Welsh failed to state viable claims and recommended that the Court dismiss Welsh's claims with prejudice, except for Welsh's claims against Defendants Say and Redman for their non-prosecution of the alleged assaults in 2022 and his state-law claims against all parties, which the FCR recommends be dismissed without prejudice.

3.   **Welsh's Objections**

Welsh filed handwritten objections totaling 82 pages with attachments. Dkt. No. 23. In his objections, Welsh recounts portions of the FCR and his pleadings. Welsh attempts to further clarify the factual basis of his claims and rehashes his claims with additional support from a variety of cases—most of which are inapposite to his claims. Welsh also submitted an exhibit consisting of a copy of the contract between the TCCO and Correct Care, LLC for provision of services at the TCCC. Welsh concluded his objections with a request for leave to amend his complaint in order to cure the deficiencies identified in the FCR.

As previously explained, the Court overrules Welsh's objections and will address only two objections: (1) that the FCR failed to conduct a Fourth Amendment analysis of his claim that Defendants Say, Redman, and Williams over-charged him with a felony, and (2) that the Court should exercise supplemental jurisdiction over his state-law claims based on diversity jurisdiction because Defendant MTC is a Utah corporation.

A.   **Fourth Amendment Analysis of the "Over-Charging" Claim**

Welsh expressly relied on the Fourteenth Amendment for his claim that Defendants Say, Redman, and Williams purposely over-charged him with a felony instead of a misdemeanor. The FCR characterizes the claim as an attempt to allege a "conspiracy-type fabrication-of-

6

evidence claim." *See* Dkt. No. 18 at 33.  But Judge Bryant concluded that the Fourteenth Amendment is inapplicable because any assertion that Defendants "over charged" Welsh falls under the Fourth Amendment, which "establishes the minimum constitutional 'standards and procedures'" for arrest and detention.  *Manuel*, 580 U.S. at 365 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975))."  *See* Dkt. No. 18 at 33.  In his objections, Welsh complains that Judge Bryant should have then analyzed the claim under the Fourth Amendment.  *See* Dkt. No. 25 at 41–43.  And Welsh appears to shift his allegations from a claim that he was over-charged with a felony to an argument that he should have been released from pretrial confinement sooner than he was.

The Court notes that the FCR does not specifically analyze Welsh's conspiracy-type fabrication-of-evidence claim under the Fourth Amendment.  But the Court concludes that it was unnecessary to do so because the same analysis is encompassed in the FCR's thorough Fourth Amendment discussion of the probable-cause determinations and "minimum constitutional standards and procedures" relating to Welsh's arrest for the felony charge.  *See* Dkt. No. 18 at 33–49 (discussing *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) and *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).   Welsh was detained on the felony charge of assault of a security guard, but he disagrees with the felony enhancement—not the assault charge itself.  And it is undisputed that a grand jury found probable cause to indict him for the felony.  But he argues that the defendants "knew they could not prosecute [him] under a felony, yet, they maintained confinement even though they could not get a felony conviction past the statutory max for a misdemeanor assault."  Dkt. No.  25 at 41.  Interestingly, in his objections Welsh "concedes that to make the initial arrest, Williams had probable cause."  Dkt. No. 25 at 35.

In short, the FCR thoroughly analyzed Welsh's arrest under the Fourth Amendment, and Welsh's claims fail because the record shows—and Welsh concedes—that his arrest was supported by probable cause. Welsh's objection is overruled.

### B. Diversity Jurisdiction Does Not Exist

Welsh also objected to the recommendation that the Court should decline to exercise supplemental jurisdiction over his state-law claims. He argues that those claims should go forward under 28 U.S.C. § 1332 because Defendant MTC is a Utah Corporation. In the absence of federal-question jurisdiction, Welsh must establish that the Court has diversity jurisdiction in this case. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Diversity jurisdiction requires complete diversity of citizenship between adverse parties and that the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. For a case to be filed in federal court based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). In other words, all of the defendants must be from a different state than Welsh. That does not appear to be the case here. While it may be true that MTC, as a Utah Corporation, is a citizen of a different state, Welsh has not alleged—much less demonstrated—that all of the other defendants are also citizens of a state other than Texas. Welsh has failed to establish that the Court has diversity jurisdiction in this case based on complete diversity of citizenship between himself and Defendants, so his objection is overruled. And even if he could establish complete diversity, the Court would accept and adopt the FCR's recommendation to decline exercising supplemental jurisdiction.

### C. Welsh's Request to Amend

At the end of his objections, Welsh seeks leave to amend his complaint. *See* Dkt. No. 25 at 62. Given the posture of this case, Welsh may only amend or supplement his pleading if the Court grants him leave to do so. *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2) requires a trial court to "freely give leave when justice so requires." Welsh is not automatically entitled to amend his complaint, however, and decisions concerning motions to amend are left to the sound discretion of the Court. *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). To aid the exercise of that discretion, Courts in the Fifth Circuit consider five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Here, Welsh has had at least two chances to hone his factual allegations. He filed responses to the Magistrate Judge's questionnaire, Dkt. No. 17, and detailed objections to the Magistrate Judge's findings, conclusions, and recommendations. Dkt. No. 25. The Court finds that Welsh has been given ample opportunity to plead his best case. Permitting further amendment now would unnecessarily delay disposition of the case. Welsh has been given notice and opportunity of the deficiencies in his complaint and has not addressed the deficiencies before now. In addition to his failure to cure the deficiencies, the Court finds that leave to amend would cause undue prejudice to the defendants and, in any event, would be futile. Thus, Welsh's general request to amend is denied.

### 4. Conclusion

Welsh's objections are overruled, and the Court accepts and adopts the findings, conclusions, and recommendation of the Magistrate Judge.

As a result, the Court orders:

(1) Welsh's state-law claims, and his claims against Defendants Scott Say and Rickie Redman for their non-prosecution of the alleged 2022 assaults, are dismissed without prejudice.

(2) All remaining claims and defendants are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

(3) All relief not expressly granted is denied and any pending motions are denied.

Judgment shall be entered accordingly.

Dated November 26, 2024.

/s/ James W. Hendrix
James Wesley Hendrix
United States District Judge